STATE of Missouri, Plaintiff-Respondent,

v.

Franklin D. REDD, Defendant-Appellant.

No. 37551.

Missouri Court of Appeals,
St. Louis District,
Division Three.

April 5, 1977.

Motion for Rehearing or Transfer
Denied May 6, 1977.

Robert C. Babione, Public Defender, Joseph W. Warzycki, Asst. Public Defender, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Robert M. Sommers, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Richard G. Callahan, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

KELLY, Presiding Judge.

The appellant, Franklin D. Redd, was convicted by a jury in the Circuit Court of the City of St. Louis of burglary in the second degree, § 560.045 RSMo 1969, and sentenced by the trial court to five years imprisonment pursuant to the Second Offender Act, §§ 560.095(2) and 556.280 RSMo 1969. On appeal he assigns two points of error which he contends entitle him to a new trial. We affirm.

Appellant does not attack the sufficiency of the evidence to support a verdict of guilty of burglary in the second degree and therefore a short statement of the facts is sufficient for disposition of this appeal.

Theresa Jackson, a 14 year old girl, resided in an apartment, 4240 West Cote Brilliante Avenue in the City of St. Louis, with her parents. This was a four-family apartment building and Miss Jackson's aunt lived in the downstairs apartment in the building known and numbered as 4238 West Cote Brilliante. Mrs. Deborah Cleveland lived in the apartment upstairs over that occupied by Miss Jackson's aunt. On the evening of March 13, 1975, at approximately 8:30 p. m. Miss Jackson was visiting in her aunt's apartment when she observed through the curtains on the front door of her aunt's apartment a man standing and knocking on the front door of Mrs. Cleveland's apartment. When no one answered, the man commenced rattling the front door to Mrs. Cleveland's apartment. At this time Miss Jackson left her vantage point at the front door of her aunt's apartment but soon thereafter heard noises coming from Mrs. Cleveland's apartment. Shortly thereafter she observed the same man leaving Mrs. Cleveland's apartment carrying something small. It was dark outside and she could not identify what it was that he was carrying.

Mrs. Deborah Cleveland testified that she had left her apartment at about 6:00 p. m. that evening, locking the door as she did so, and when she returned at 11:30 p. m. she found the front door open, the lock and the door frame damaged, and her portable television set missing.

The incident was reported to the police who later that evening arrested the appellant as he was about to enter his home around 12:11 a. m., March 14, 1975. The basis for appellant's arrest was "more or less a composite description" from the eyewitness and Mrs. Cleveland, who was acquainted with him. After appellant was taken into custody he was given his Miranda warnings and taken directly to the police station. At approximately 2:00 a. m. defendant was once again given Miranda warnings and about 10 minutes later, after he had been advised what charges were going to be lodged against him, inquired what he could do to get rid of the cases. The police officers advised him that if he wished to waive his rights, make a complete statement and cooperate, it might be to his advantage, but that they could not drop the charges. Appellant then admitted taking the television set from Mrs. Cleveland's apartment and stated that he would take the police to recover it. However, after he was taken out of the police station and put in a car to go to where the television set was, he changed his mind and said he did not wish to go anywhere. He was thereupon returned to the police station.

Shortly thereafter the appellant was put in a three-man lineup with two other Black men, both prisoners detained at the police station. He resisted going into the showup room and had to be carried into it. Throughout the showup appellant remained seated on the floor of the room while the other two men remained standing. Miss Jackson was brought into the viewing room where she could observe the lineup and after studying the lineup for a minute, pointed out the appellant as the man she had seen earlier that evening at Mrs. Cleveland's front door.

At trial Miss Jackson also identified the appellant as the culprit.

Prior to trial the appellant's counsel filed a motion to suppress identification on the grounds "that the conduct of identification procedures at a pre-trial confrontation were so unnecessarily suggestive and conducive to irreparable mistaken identification as to

be a denial of due process." A hearing was had on this Motion on May 29, 1975. Appellant did not testify. On the same date the Motion was overruled because the trial court found "beyond a reasonable doubt that the principles of *Wade v. U. S.* were not violated, and that under a totality of the circumstances shown in this cause, the identification of the defendant has a source independent of any alleged illegal lineup." At trial, after Miss Jackson took the stand and gave her name, appellant's counsel renewed his motion to suppress identification "which was made and filed by our office in this cause of action." The trial court overruled counsel's "objection" for a hearing outside the jury on the question of the motion because the matter was decided at a prior time by another judge after an evidentiary hearing. In his Motion for New Trial appellant raised this same point as follows:

"2. It was error for the Court to deny the motion to suppress identification which was renewed at the time of trial because testimony at trial supported the allegation that the conduct of identification procedures at the lineup were so unnecessarily suggestive and conclusive to irreparable mistaken identification as to be a denial of constitutional due process of law."

Appellant, in the Points Relied On section of his brief, raises this Point as follows:

"The trial court erred in denying the motion to suppress identification of appellant because the pre-trial identification procedures were so unduly suggestive and conducive to the irreparable mistaken identification as to be a denial of due prosess (sic) of law."

Respondent, correctly, contends that appellant has failed to preserve anything for this court to review because both his Motion to Suppress Identification and Motion for New Trial consist of bare conclusional allegations, absent any factual support. It is incumbent upon the movant in his motion to suppress identification to state facts of such specific nature as to enable the court to conclude that a serious

claim is presented. *State v. Rutledge,* 524 S.W.2d 449, 454[2] (Mo.App.1975); *State v. Jordan,* 506 S.W.2d 74, 80[7] (Mo.App.1974); *State v. Parker,* 413 S.W.2d 489, 494[6] (Mo. banc 1967), cert. den. 390 U.S. 906, 88 S.Ct. 823, 19 L.Ed.2d 874 (1968). It is also incumbent upon a defendant to set forth in detail and with particularity the specific grounds or causes which he contends entitle him to a new trial in his Motion for New Trial, Rule 27.20(a) V.A.M.R. Rule 84.04(d) requires that Points Relied On in an appellant's brief state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous. Appellant's Point here is nothing more than a mere abstract statement of the law applicable to criminal trials where the question is raised whether a witness's identification testimony should be admitted at trial in accord with the principles of *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and its progeny. The purpose of Rule 84.04(d) is to facilitate the work of the appellate court and the litigants so that the issues raised on appeal may be clearly presented by a concise, factual summary of what the appellant claims the trial court did wrong and why he claims it was wrong, so that respondent's counsel may answer appellant's contentions. *Murphy v. Deksnis,* 476 S.W.2d 150, 151[1] (Mo.App.1972). As stated, this Point Relied On utterly fails to fulfill the purpose of the Rule; it does not advise either this court or respondent's counsel why the trial court's action was wrong in other than conclusional terms. Points Relied On by an appellant seeking reversal of his conviction should definitely isolate and formulate precise issues to be reviewed, and if that function is to be observed, these issues should not be relegated to the argument portion of the brief. *State v. Gomillia,* 529 S.W.2d 892, 895[4] (Mo.App. 1975). We hold, therefore, that this Point has not been preserved for review.

Appellant's second Point is that the trial court erred in denying his motion to suppress the statements made by appellant because said statements were: (A) the fruit of an arrest without probable cause, (B) made without a voluntary, knowing and intelligent waiver of, (1) right to counsel, or (2) the right to remain silent, and (C) involuntary. Respondent again points out to this court that appellant's Motion to Suppress Statements, was general in nature, that he did not object to the testimony of the police officers relative to statements he had made while in custody other than to renew his Motion to Suppress without any specific objections, and in his Motion for New Trial simply reiterated the general allegations previously made in his Motion to Suppress. Respondent contends that nowhere, during the course of the trial, did the appellant raise the specific objections appearing for the first time in his brief in this court.

Appellant's Motion to Suppress Statements, as it appears in the transcript, is based upon the grounds that the statements "were made involuntarily, that there are the fruit of an illegal arrest, that they were made without adequate advice concerning defendant's right to counsel and his right to remain silent, or that they were made without an intelligent waiver of his rights." After an evidentiary hearing the Motion to Suppress Statements was overruled.

The trial court found beyond a reasonable doubt that the appellant was advised of his constitutional rights (1) that he had the right to remain silent, (2) that anything he said would be used against him in Court, (3) that he had the right to have an attorney present at any questioning, and (4) that if he could not afford an attorney one would be provided him without cost to him. The trial court further found that the appellant understood his rights given, and knowingly, intelligently and voluntarily waived them.

The cause proceeded to trial and when Patrolman Gerald McFadden was offered as a witness for the State, appellant renewed his "motion to suppress" which had been filed "on a prior occasion" on the grounds that the appellant had reason to believe that the police officer witness was going to testify with regard to a statement made by the appellant which would implicate him in the crime. The trial court then inquired whether appellant's request was for a voir

dire examination to determine the admissibility of the statement, and after appellant's counsel affirmed that was the purpose, the trial court denied the motion because the matter had already been ruled on by another member of the court. Officer McFadden was then permitted to testify to statements made by the appellant after he had been taken into custody and given his Miranda warnings, wherein he admitted commission of the burglary of the Cleveland apartment and stated that if the charges were dropped he would show them the house in the 4200 block of Cook Avenue where he had taken the T.V. and get it back so it could be returned to the owner. The police officer further testified that when the police officers got ready to take appellant to the house on Cook Avenue he changed his mind and informed them that he wasn't going to show them where the T.V. set was. Richard Boyd, another police officer, was called as a witness by the State, and without objection, testified that after appellant was taken into custody and advised of his Miranda rights he made the statement attributed to him by Patrolman McFadden in his testimony. The only objection interposed to this line of testimony was that it was "getting to be narrative," and that objection was sustained. A third police officer, Jack Hendricks, when offered by the State, was permitted to testify that he was present in the "report room" at the 8th District Police Station when the appellant was questioned after he had been advised of his Miranda rights by Officer McFadden concerning the burglary on Cote Brilliante and that the appellant said that he did commit the burglary, that he would take the police officers to where he sold the television set if they were to see about "getting him off or turned loose," and that he had sold the television set to a person whose name he refused to give them but who lived on Whittier and Cook. This police officer reiterated appellant's offer to take them to the house on Cook to recover the television set and appellant's refusal to carry out the offer when they got out of the police station and into the police car. The only objection to this line of testimony

voiced by the appellant was: "Object at this point, getting to be narrative," and this objection was sustained by the trial court on those grounds.

█ In view of the foregoing we conclude that the appellant failed to preserve this point for review. As we have previously stated in disposing of the appellant's first Point, it is the responsibility of the appellant to make known to the trial court his objections to the admissibility of evidence and whether it has been obtained in violation of guarantees afforded him by the Constitution of the United States or of the State of Missouri, or the decisional law of the Federal or State courts. In doing so he must state specifically the grounds for his objection. It has been held that where a party has reasonably objected to evidence of a certain character by one witness and his objection has been overruled it is not necessary for him to repeat his objection when testimony of the same kind by another witness is offered. *Schierbaum v. Schemme*, 157 Mo. 1, 57 S.W. 526, 532[7] (1900). Since, however, appellant's objection to Patrolman McFadden's testimony relative to incriminating statements made by the appellant at trial were no more specific than the conclusional allegations contained in appellant's Motion to Suppress Statements, and which his counsel stated was the basis for his objection, it suffered from the same infirmities afflicting the Motion to Suppress and failed therefore to preserve anything for review. We have already pointed out with respect to appellant's Motion for New Trial that it constituted nothing more than a reiteration of the grounds for suppression of the appellant's statements contained in the Motion to Suppress Statements, and it too failed to preserve anything for this court to review. Appellant's Point II Relied On also fails to meet the requirements of Rule 84.04(d) in the same manner as did his first Point Relied On. We hold, therefore, that this Point has not been preserved for review on appeal.

Pursuant to the requirements of Rule 28.-02 V.A.M.R. we have considered the suffi-

ciency of the Amended Information, the verdict, the judgment and the sentence and find them to be in proper form and free from error.

The judgment is affirmed.

GUNN, J., and JOHN L. ANDERSON, Special Judge, concur.