

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI, )
)
    Plaintiff-Respondent, )
)
vs. ) No. SD35041
)
SERENO BRUCE THOMPSON, ) **Filed: May 21, 2019**
)
    Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF CRAWFORD COUNTY

Honorable Kelly W. Parker, Circuit Judge

**<u>AFFIRMED</u>**

A jury convicted Sereno Bruce Thompson ("Defendant") of statutory sodomy in the first degree, and the trial court sentenced him to life in prison. Defendant appeals claiming in a single point relied on that the trial court erred in permitting, over Defendant's objection, the child victim to testify while wearing a jacket that defense counsel, in his objection, described as "a biker jacket from BACA [Bikers Against Child Abuse]." We deny Defendant's point because he fails to persuade us that the trial court abused its discretion in permitting the child victim to testify while wearing the jacket.

## Facts and Procedural Background

A jury trial commenced on April 10, 2017. Before *voir dire*, Defendant waived arraignment on, and pled not guilty to, a second amended information that charged him with statutory sodomy in the first degree and alleged that he was a prior offender based on two, prior felony convictions. Based on exhibits that were admitted without objection by defense counsel, the trial court found "that Defendant is a prior and a persistent offender beyond a reasonable doubt."

In the course of *voir dire*, defense counsel asked the venire panel:

Is there anyone here that's part of the rape victim advocate group? I see no hands. What about the bikers, the Bikers Against Child Abuse, you guys know what I'm talking about, the ones that wear the leather jackets and they show up at trials. And is there anyone here that's a member of BACA? I see no hands.

The State's first witness was the child victim who was ten at the time of the offense, and was eleven at the time of trial. Immediately after the child victim was placed under oath and before any testimony was elicited, the prosecutor asked to approach the bench and the following exchange occurred between the trial court, prosecutor and defense counsel:

[Prosecutor]: Judge I have a chair that's a little taller. In that chair he has trouble seeing over the stand is what he had indicated previously. I have a red chair here that sits a little higher and I'm requesting him be allowed to sit in it.

The Court: Any objection?

[Defense Counsel]: No but I'm going to object to what he's wearing. He's wearing a biker jacket from BACA on this witness stand. It is not his jacket and they are doing this to deliberately influence the jury.

The Court: Okay.

[Defense Counsel]: I did not know he was going to wear this judge so now the jury's already seen it. I don't know if we can remove that taint at this point, because now if the court rules in my favor we'll have him remove the jacket.

The Court: He's, I've allowed these jackets in the past. I've had witnesses testify with them on in the past. The objection to the jacket is overruled and denied. I'll let you inquire of him as to that if that helps.

[Defense Counsel]: I would ask that my objection be federalized[1] at this point pursuant to our motion in limine.

The Court: Okay the court will allow it to be a federalized objection.

[Defense Counsel]: Thank you.

The Court: You may place the chair.

[Prosecutor]: Thank you.

The record provided us does not contain any further description of the jacket worn by the child victim or any other reference to the jacket, and does not reflect the presence in the courtroom or in or near the courthouse of any member of Bikers Against Child Abuse. Further, the only mention of Bikers Against Child Abuse in the presence of the jury was by defense counsel during *voir dire*. The jury returned a verdict finding Defendant guilty

---

[1] In a pretrial motion labeled "Motion to Federalize Objections," Defendant requested that "during the course of the trial in this cause, should counsel for defendant ask that an objection be 'constitutionalized' or 'federalized' that all PARTIES and the COURT will take, understand and consider that objection to encompass, include and preserve a claim and objection that the ruling [sic] question violates defendant's rights to" ten separate legal principles under the federal and Missouri constitutions to relieve defense counsel of "the necessity of counsel reciting the litany of applicable amendments [sic]." There is no discussion in the motion of how any of the ten legal principles applies to any particular objection. Although the motion and request at trial to federalize was granted by the trial court, the motion and request to federalize at trial add nothing to Defendant's objection at trial because the motion and request to federalize do not explain why a specific ground requires the trial court to take a specific course of action and are too general to preserve a ruling for appellate review. *See* **State v. Nunnery**, 129 S.W.3d 13, 21 (Mo.App. S.D. 2004) (in discussing a request for "federalization" of objections that apparently was taken with the case, stating "Appellant cannot now complain regarding the trial court's ruling on the oral motion to suppress. '[I]t is the responsibility of the appellant to make known to the trial court his objections to the admissibility of evidence and whether it has been obtained in violation of guarantees afforded him by the Constitution of the United States or of the State of Missouri, or the decisional law of the Federal or State courts. In doing so he must state specifically the grounds for his objection.' *State v. Redd*, 550 S.W.2d 604, 608 (Mo.App. 1977).").

of statutory sodomy in the first degree.  The trial court subsequently sentenced Defendant to life in prison.

## Analysis

In Defendant's sole point relied on, he claims that the trial court "abused its discretion in overruling defense counsel's objection to [the child victim's] wearing a Bikers Against Child Abuse jacket during his testimony, because this violated [numerous constitutional rights of Defendant,] in that the jacket was more prejudicial than probative since it conveyed the message that [Defendant] was presumed guilty."[2]  We deny Defendant's claim based on the Western District's reasoning in rejecting a similar claim in **State v. Hartman**, 479 S.W.3d 692, 704-06 (Mo.App. W.D. 2015) (in which two young child victims were permitted to wear vests with "BACA" inscribed on the back of the vests while testifying).

### Standard of Review and Applicable Legal Principles

"The trial court has considerable discretion in matters regarding examination of witnesses." *State v. Powell*, 318 S.W.3d 297, 302 (Mo.App. W.D. 2010) (citing [*State v.*] *Gollaher*, 905 S.W.2d [542,] 546 [(Mo.App. E.D. 1995)]).  "The exercise of that discretion should not be disturbed on appeal unless it has been abused or substantial harm has been improperly done to the complaining party." *Id*. (citing *Gollaher*, 905 S.W.2d at 546–47).[]
Hartman argues that the cumulative effect of the presence of BACA members around the children prior to trial, considered in Point I,

---

[2] It is doubtful that Defendant's point relied on is preserved for our review.  Rule 84.04(e), Missouri Court Rules (2019), requires that the argument portion of the brief "include a concise statement describing whether the error was preserved for appellate review; if so, how it was preserved; and the applicable standard of review."  Defendant's point fails to comply with this requirement.  At trial, defense counsel's stated ground for his objection to the child victim's jacket was that "they [(presumably meaning Bikers Against Child Abuse and the child victim)] are doing this to deliberately influence the jury."  Defendant's motion for a new trial alleges the grounds for the objection to be that Defendant was prejudiced because the "jacket was used as a comfort item for the child," and "was used [to] invoke more sympathy for the victim and inflame the passions of the jury, which created an unfair prejudice against the Defendant."  Although Defendant's brief contains a short section labeled "Preservation," the section does not discuss, or even mention, the differences between the grounds raised at trial, in Defendant's motion for a new trial, and before us.

4

with the children wearing the vests while testifying was inherently prejudicial and deprived him of the right to a fair trial. Missouri courts have applied the "inherent prejudice" test for "courtroom arrangements," such as the utilization of non-standard procedures for minors while testifying. *See, e.g., State v. Dickson*, 337 S.W.3d 733, 742–45 (Mo.App. S.D. 2011); *Gollaher*, 905 S.W.2d at 546–47. These cases then consider whether the non-standard procedure presents the unacceptable risk that impermissible factors will come into play in the minds of the jurors that would erode the accused's presumption of innocence. *See Dickson*, 337 S.W.3d at 742; *Gollaher*, 905 S.W.2d at 547.

But, in dealing with minors involved in sexual abuse, courts are given more leeway to utilize non-standard procedures. *Powell*, 318 S.W.3d at 303.

> Young children, who are victims of sexual abuse, have great difficulty in recounting to juries the sordid details of their painful experience. Wide latitude should be granted to trial courts so that such victims can recount their experiences without being overwhelmed by crippling emotional strain. Their testimony is often of critical importance since they are often the only occurrence witness.

*Id*. (quoting *State v. Pollard*, 719 S.W.2d 38, 42 (Mo.App. E.D. 1986)). "However, behavior or argument designed solely to appeal to the jury's emotional sympathy for a witness is irrelevant and, therefore, improper." *Id*. (citing *State v. Knese*, 985 S.W.2d 759, 774 (Mo. banc 1999)). Essentially, when determining whether a courtroom practice presents the unacceptable risk that impermissible factors would come into play in the minds of the jurors, the special status and needs of a child sexual abuse victim must be considered in the balance.

. . . .

The question now is whether the trial court's decision to allow the child victims, ages five and seven, to wear vests with "BACA" on the back while testifying changes this result. The court allowed the victims to do so because the victims felt supported by BACA. The trial court ensured that "BACA" would not be explained to the jury and that no other individuals would be allowed to wear the vests where they could be exposed to jurors, either inside or outside of the courthouse. The record shows that no questions were asked regarding the meaning of BACA, there is no indication that any effort was made to focus attention on the vests, and nothing indicates that the jury was informed regarding the meaning. There is also no indication that the use of vests was calculated to elicit emotional sympathy from the jury. Accordingly, we also find that

the trial court did not abuse its discretion in allowing the child victims to wear the vests while testifying.

Courts are given significant discretion when it comes to the examination of children during trial, especially where the issues pertain to sexual abuse. We cannot say the trial court abused its discretion here in allowing the victims to wear vests inscribed with "BACA," where the trial court was extremely diligent and successful in ensuring that there was no unacceptable risk that impermissible factors influenced the jury.

*State v. Hartman*, 479 S.W.3d at 704-06 (heading and footnote omitted).

Discussion

In this case, there is no indication that any member of Bikers Against Child Abuse attended Defendant's trial or was present in or near the courthouse at the time of the trial. Further, the only description of the child victim's vest in the record was defense counsel's description of the vest in his objection to the trial court outside the presence of the jury – i.e., "He's wearing a biker jacket from BACA on this witness stand. It is not his jacket and they are doing this to deliberately influence the jury." There is no indication how defense counsel identified the jacket as "a biker jacket from BACA," or description of facts that support a conclusion the jacket contained letters, symbols or other inscriptions that could be construed as conveying a message to the jury adverse to Defendant (or, as alleged in Defendant's brief, a "display" "implying that the Bikers Against Child Abuse believed [the child victim's] testimony"). Further, no attention was focused on the child victim's jacket and the jacket was not commented on before the jury. Also, except possibly for one brief reference by defense counsel during *voir dire* to Bikers Against Child Abuse, there is no indication in the record that any member of the jury was familiar with Bikers Against Child Abuse or the message that the group advocated.

Defendant does not identify any actual prejudice attributable to the child victim's jacket that is supported by the record. In the circumstances of this case, Defendant fails to persuade us the child victim's jacket was so inherently prejudicial that the trial court abused its discretion in permitting the child victim to wear the jacket while testifying.[3]

Defendant's point is denied, and the trial court's judgment is affirmed.

Nancy Steffen Rahmeyer, J. – Opinion Author

Don E. Burrell, P.J. – Concurs

Gary W. Lynch, J. – Concurs

---

[3] In his brief, Defendant also suggests that the trial court's denial of his objection to the child victim's jacket was erroneous because the trial court did not make findings required by section 491.725.3, RSMo 2016, or "a finding of necessity for the jacket." We do not consider either of these grounds because neither was presented to the trial court for its consideration. *State v. Hartman*, 479 S.W.3d at 705 n.11.